No. 1792.—Heirs of Bastable *v.* The Succession of J. D. Denegre.

A surety on an appeal bond may limit his liability by a stipulation to that effect.* 21 An. 447, 730.

A party acting as agent or employé for a number of heirs in the prosecution of a land claim, under an agreement and contract, may withhold the payment of so much of the proceeds of the sale of the land, which he has received for them, as will be necessary to cover possible liabilities on account of suits brought by settlers for improvements made on the land, unless the heirs give satisfactory security against loss, resulting from such suits.

Loyal Case and the heirs of Bastable made a contract whereby Case was to prosecute their claim to the lands in the Bringier grant, in the parish of Concordia, Louisiana, and defray all expenses incident thereto, for one-half of the land recovered. After judgment was obtained in favor of the heirs, Case sold and assigned his contract to James D. Denegre. Held by the court, that under this contract neither Case, nor his assignee, was responsible for the taxes on the land prior to the recovery of possession by the heirs, nor for claims for improvements made on the lands. That these claims constituted an incumbrance on the land itself, and was not included among the expenses which Case bound himself to defray in establishing their rights to and recovering possession of the lands claimed.

An agent or mandatary receiving notes for the sale of property belonging to his principal, becomes personally responsible if he fails to use due diligence in enforcing their collection.

APPEAL from Second District Court of New Orleans. *Thomas,* J. *George W. Brown,* and *Kelly & Howe,* for plaintiffs and appellees. *W. H. Hunt,* and *Campbell, Spofford & Campbell,* for defendant and appellant.

REPORTER.—This case was pending on appeal before the former Supreme Court, which was superseded by the present court. The decision on the motion to dismiss the appeal on the ground that the sureties on the appeal bond had divided their liability, was rendered by Mr. Justice Howell, of that court, adversely to the movers. The case was afterwards transferred to the present Supreme Court. It may be here remarked that the doctrine announced in the decision of this motion, that sureties on appeal bonds may limit their liability by stipulation to that effect, has since been reaffirmed by the present court. See 21 An. 447, 730.

HOWELL, J. A motion is made to dismiss this appeal on two grounds:

*First*—Because the bond is not for a sum exceeding by one-half the amount of the judgment, nor is it for an amount fixed by the judge.

The order for appeal directs the bond to be given according to law, and it is given for the sum of $32,000. The judgment is in favor of plaintiffs for the sum of $16,998 78, with legal interest on certain amounts respectively from different dates, running from July, 1856, to July, 1859, subject to various credits, at dates extending from November, 1851, to April, 1858, and decrees them to be the owners and entitled to possession of *one-half* of certain notes uncollected, amounting to $6152 49, and bearing eight per cent. interest from July, 1855, and some of which are in suit. The calculation which we have made of the interest on the principal and the payments included in the judgment, makes the amount to which plaintiffs are entitled under it about ninety dollars more than the bond. But considering the nature and dates of the notes to be delivered, and the fact that our calculation on the numerous debit and credit amounts may not be precisely correct, but may be

erroneous, as we have found that of plaintiffs' attorneys to be, we are disposed to apply the maxim, "*De minimis,*" etc., and hold the bond to be sufficient in amount. The more regular course, perhaps, would have been for the judge to estimate the value of the said notes, and the bond could have been given for a sum exceeding by one-half that amount, and the amount of the money portion of the claim. But the same end, we think, has been attained, the object being to have a bond in an amount sufficient in law to protect the appellees.

*Second*—The ground is, that the bond is signed by three sureties, who limit their responsibility each for a particular portion of the bond, the three equaling the amount thereof, which appellees say is not legal, and they cite article 579 C. P. This article, as we construe it, declares that the bond is given as surety that the appellant will prosecute his appeal and satisfy whatever judgment is rendered against him, otherwise the surety on the bond will be liable in his place, and its object is to have a bond which will be ample security to the appellee, without reference specially to the number of persons who shall sign it as sureties, although the word "surety" in it and other articles on the same subject is used in the singular number. We are not aware of any provision of law which prohibits more than one person to sign as surety, and for a less amount each than the bond. We are inclined to think the sureties may specify the amount for which they bind themselves respectively, but they can not change the nature of their obligation to that amount. The objection urged is one of convenience only, but not of such weight as to destroy the bond. It may sometimes be impossible for an appellee to procure one person good for the whole amount; and in other cases it may be as inconvenient for him to procure an unusual number, as for the appellee to pursue the different ones furnished. We are not to suppose that the appellant will increase the number in order to cause inconvenience to the appellee, but rather to obtain for him the security which the law requires, whether in one or more persons; the object being to furnish sufficient surety. We do not construe the law on this subject to confine an appellant to only one person as surety on his appeal bond.

It is therefore decreed that the motion be set aside, at the costs of the movers.

## On the Merits.

Ludeling, C. J. Emma Bastable, the widow of Isaac N. Taylor, of Ohio, and Mary Jane Bastable, wife of John S. Gano, of Illinois, the heirs of Jonah Bastable, deceased, sue to recover of the defendants, executors of James D. Denègre, forty-one thousand five hundred and thirty-three dollars, with legal interest and costs; this sum being the proceeds of the sale of their interest, an undivided sixth, in the lands

embraced in the Bringier grant, and which, the plaintiffs allege, James. D. Denègre received from the sheriff and failed to pay to them. In this court the plaintiffs have limited their claim to twenty-four thousand and sixty-two dollars and forty-four cents.

The defense is, that James D. Denègre only received seven thousand' and sixty dollars and ninety-six cents in money, and fifteen thousand one hundred and seventy-nine dollars and seventy-two cents in notes, as the proceeds of the sale of the plaintiffs' interest in the lands ; that the said Denègre had advanced large sums of money to the plaintiffs,. which is specifically stated in an account annexed to the answer, and that the money and the notes, less the advances made, would have been delivered to the plaintiffs by J. D. Denègre, but for the institu- tion of several suits against J. D. Denègre and others, by settlers on the Bringier grant, for the value of improvements made upon the lands, amounting, in the aggregate, to sixty thousand dollars. They aver readiness to deliver the money and notes to plaintiffs, subject to the deductions mentioned in the account, so soon as the suits are decided and the succession is freed from responsibility.

Jonah Bastable, William Brother and Isaac Lambert purchased, on the tenth of May, 1828, at syndic's sale, in the case of Louis Bringier v. His Creditors, for about one hundred dollars, a certain claim for forty or forty-two thousand arpents of land, situated at the confluence of the Ouachita and Black rivers, granted to said Bringier by the Baron de Carondelet in 1796.

In 1846 the Bastable heirs, the plaintiffs in this suit, entered into an agreement with Loyal Case, whereby they agreed to give him one-half of whatever he might recover for them under their claim to the Brin-. gier grant, in consideration of his attending to the business and paying all the fees, costs and expenses incident thereto. In pursuance to this agreement a suit was instituted, in the names of the Bastable heirs, against Curry & Garland for an undivided third of the lands granted to Louis Bringier, and there was a final judgment in their favor for an undivided sixth of the grant. In 1854 there was a judgment ordering a sale of the lands embraced in the grant to effect a partition among the several owners thereof, and, at the sale, made on the seventh day of July, 1855, the lands, brought, in cash and notes, $237,921 36.

James D. Denègre, who had acquired the *rights*, and assumed the *obligations*, of Loyal Case, received the portion of the price which belonged to said heirs, to wit : $7,060 96, cash, and $15,179 72, in notes.

The first question to be decided is, whether the plaintiffs can recover any judgment against Denègre's succession, until the suits, instituted by the settlers on the lands in the grant, for the value of improve-. ments, shall have been decided ?

The possible liability of the plaintiffs to the squatters for the improvements made on the lands, can not exceed five thousand dollars, and one thousand dollars would be ample to cover their proportion of the expenses of the litigation.

At the date of the sale the indebtedness of the plaintiffs to J. D. Denègre, for taxes paid and advances in money to them, with legal interest, amounted to about $4,093 01. The cash received by J. D. Denègre from the sheriff was seven thousand and sixty dollars and ninety-six cents, being two thousand nine hundred and sixty-seven dollars and ninety-five cents in excess of the sum due to him, besides the mortgage notes of the purchasers for $15,179 72, which bore interest at the rate of eight per cent. per annum, and were to mature at one and two years from the date of the sale. The fear that the suits for improvements would be instituted could not justify the retention of the *whole* proceeds of the sale of the plaintiffs' interest in the lands. We think, however, that justice requires that the succession of J. D. Denègre should be fully secured against loss on account of the suits instituted against J. D. Denègre and others, for improvements, as aforesaid, and that, to that end, the executors should be permitted to keep in their hands six thousand dollars of the moneys received by J. D. Denègre on account of the sale of the interest of the Bastable heirs, until the final decision of said suits for improvements, or until the plaintiffs furnish satisfactory security to the executors against loss to the succession, resulting from the suits before mentioned.

We think a fair interpretation of the contract between Loyal Case and the Bastable heirs justifies the conclusion that Case obliged himself to pay all the costs and expenses necessary "for the recovery and possession of said tract of land ;" that is, the law charges, attorneys' fees and traveling expenses of himself or others employed by him, incurred in the prosecution of the rights of the Bastable heirs, until they were put in possession of their inheritance. The plaintiffs were absentees and poor, unable to prosecute their rights ; they stipulated to give one-half of whatever might be recovered by suit or otherwise, in order that they' might enjoy the fruits of the other half of their property. All the parties to the contract knew that the rights of the plaintiffs consisted of an undivided interest in and to property which had to be divided in kind or by sale before recovery or possession of the property could be had. This seems to have been the view taken of the contract by the parties to it, for J. D. Denègre continued to attend to the business after he had sold his interest, acquired from Loyal Case, to Norment &. Preston. If the obligations of Loyal Case, under the agreement with the plaintiffs, and assumed by J. D. Denègre when he bought from Loyal Case, had been performed, when the judgment was rendered in. the case of the Heirs of Bastable *v.* Curry et al., recognizing the plaintiffs as owners of one-sixth of the Bringier grant, why did J. D..

Denègre continue to attend to the business, until a final partition, by licitation, of the lands? It can not be because he had bought at the tax sale, for he never opposed that title against the plaintiffs. "He recognized *theirs* to be the real, ultimate and beneficial ownership, and *his* only the apparent and nominal title." It is but just to the memory of J. D. Denègre to adopt the hypothesis of the defendants' counsel, that "all that was wanted was to get the lands sold to the greatest advantage. The use of Mr. Denègre's name and credit, as one of the co-proprietors and warrantors, was of great benefit in this respect; whereas, the names of the non-resident and unknown plaintiffs would have been a drawback." This was in the line of his duty. Therefore, the fees paid by J. D. Denègre, in suit for partition, ought not to be charged to Emma Taylor or Mary Jane Gano.

On the other hand, Case did not obligate himself to pay the taxes, or the value of improvements placed on the lands, in case the courts should decide that anything was due for improvements.

The account of receipts and disbursements by J. D. Denègre, and filed in this case, is admitted to be correct, with the exception of two items : $2000 paid W. O. Denègre for professional services in the partition suit, and $1200 paid to Judge Curry.

We have already said that the first of these items was not due by the plaintiffs, being included in the expenses to be borne by Loyal Case or his assignee, under the agreement with the plaintiffs. For the $1200, Judge Curry had a judgment against the heirs of Bastable, and whether it was for "one-sixth part of the expenses incurred by Thomas Curry in procuring the confirmation of the grant, and one-third of the taxes paid to the sheriff on his half of said lands," or wholly for taxes, it can not fairly be said to be embraced in "the costs and expenses," which Loyal Case agreed to pay. The costs and expenses, for which Loyal Case bound himself, were such as might accrue in proceedings carried on by him or his agents for the recovery of the property of the plaintiffs. The debt due to Judge Curry existed as an incumbrance on the property, a debt against the property, and Loyal Case, or his assignee, took the property *cum onere*. The plaintiffs are liable only for one-half of that sum. The defendents should be held responsible for the notes not collected. The last of these notes matured in July, 1857, and they were not placed in the hands of an attorney for collection until several years after their maturity.

The defendants have failed to furnish any good reason for this want of diligence. 4 N. S. 655; 14 La. 443; 6 An. 763; 4 An. 309; 4 An. 300; 10 An. 98.

It is therefore ordered and adjudged that the judgment of the district court be avoided and reversed, and it is decreed that the plaintiffs have judgment against the defendants for $6816 38, with five per cent. interest from the thirtieth of April, 1858 ; for $2644 94, with

five per cent. per annum interest from the twenty-fourth of July, 1859, and for $6207 49, with five per cent. interest from judicial demand, and costs of the district court. It is further ordered that there be a stay of execution on $6000 of this judgment, until the final decision of the suits for improvements against J. D. Denègre and others, or until satisfactory security be given to the executors of J. D. Denègre against loss on account of said suits. It is further ordered that the appellees pay the costs of this appeal.

Rehearing refused.

Mr. Justice Howe recused.